UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARLENE ALICE TRUJILLO,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>Defendant. | No. 1:21-cv-00273-JLT-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 24, 27)**<br><br>**OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS** |

### I.   Introduction

Plaintiff Darlene Alice Trujillo ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is before the undersigned for issuance of Findings and Recommendations based on the parties' briefs.[1] Docs. 24, 27. After reviewing the record the undersigned finds that substantial evidence and applicable law support the ALJ's decision and recommends that the Court direct entry of judgment in favor of Defendant, against Plaintiff, affirming the final decision of the Commissioner of Social Security.

### II.   Factual and Procedural Background[2]

On October 26, 2018 Plaintiff applied for supplemental security income. The Commissioner denied the application initially on January 22, 2019 and on reconsideration on March 6, 2019. A hearing was held before an Administrative Law Judge (the "ALJ") on May 19, 2020. AR 35–72. On June 1, 2020 the ALJ issued an unfavorable decision. AR 17–34. The Appeals Council denied review on August 10, 2020. AR 6–11.

---

[1] The parties did not consent to jurisdiction of the Magistrate Judge. *See* Docs 8, 11. Accordingly, the matter was assigned to "Unassigned" District Judge and subsequently reassigned to District Judge Jennifer Thurston. Doc. 9, 22.

[2] The undersigned has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized. Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

### III. **The Disability Standard**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the

claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.  The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of October 26, 2018.  AR 23.  At step two the ALJ found that Plaintiff had the following severe impairments: multiple hemangiomas, symptomatic cholelithiasis, small hiatal hernia, costochondritis, generalized osteoarthritis, and asthma.  AR 23–24.  At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 24–25.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) with the following additional restrictions:

> . . . she should avoid prolonged exposure to concentrated chemicals, dust, fumes, and gases. Claimant must avoid extreme workplace hazards such as unprotected heights or dangerous moving machinery. Claimant may only frequently, as opposed to repetitively, handle and finger bilaterally.

AR 25–29.

At step four the ALJ concluded that Plaintiff could perform her past relevant work as a nut

sorter and bottle line attendant. AR 29–30. Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since her application date of October 26, 2018. AR 30.

### V. Issues Presented

Plaintiff asserts two claims of error: 1) that the ALJ erred by failing to develop the record with an updated assessment of Plaintiff's limitations, and 2) that the ALJ "failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints." Br. at 1, Doc. 24.

#### A. Failure to Develop the Record

##### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes*

*v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

The ALJ's duty to further develop the record is triggered only where the evidence is ambiguous or inadequate to allow for proper evaluation. 20 C.F.R. §404.1527(c)(3); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

### 2. <u>Analysis</u>

Dr. Wagner conducted a consultative physical examination of Plaintiff on January 5, 2019. AR 452–57. He opined Plaintiff could perform medium exertional lifting/carrying (25 pounds frequently and 50 occasionally) with some environmental limitations (exposure to chemicals, dust, fumes and gases) but no sitting, standing, or walking limitations, no postural limitations, and no manipulative limitations. AR 456. Drs. Bobba and Mitchell similarly opined at the initial and reconsideration levels in January and March of 2019. AR 132–34; 146–48.

The ALJ found support for the restriction on pulmonary irritants, but that the opinions were otherwise unpersuasive in that "The evidence of record supports a finding of greater exertional limitations, as well as additional manipulative and environmental limitations." AR 28.

Plaintiff contends that: 1) Dr. Wagner's opinion was based only upon hypertension, asthma, liver hemangiomas, and gallstones; 2) the ALJ also found additional impairments of hiatal hernia, costochondritis, and generalized OA; 3) that the ALJ found the record supported additional limitations; and, 4) The ALJ was not qualified to interpret the additional clinical findings without assistance from a medical expert, and committed legal error by failing to obtain updated medical opinion evidence. Br. at 8. These contentions are not entirely factually or legally supported.

The RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence. *See* 20 C.F.R. §§ 404.1545(a)(3). During the gap in time between the initial/reconsideration determinations and the ALJ's subsequent hearing decision, claimants

often continue pursuing care and generate additional medical records which the ALJ admits into the record.  Thus, an ALJ is almost always tasked with performing some independent review of medical evidence that was never considered by one of the agency's reviewing physicians and then translating the same into an RFC.  This is consistent with the ALJ's role. *See  Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015),  ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

Further, the regulations provide that the agency may obtain a consultative examination to resolve evidentiary ambiguity or insufficiency, not that an ALJ must do so in every case.  *See* 20 C.F.R. § 404.1519; *Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020).  Thus, the timing of the consultative exam cannot, in and of itself, render the record ambiguous or inadequate for adjudication because the regulations do not require the agency to obtain a consultative exam at all.

Plaintiff appears to suggest that Dr. Wagner's opinion was either stale or based on only a partial view of Plaintiff's conditions.  Hypertension, asthma, liver hemangiomas, and gallstones were the only four conditions listed under "Diagnoses" in Dr. Wagner's opinion, but it does not necessarily follow that these were the only conditions upon which he based his opinion. Br. at 456. Dr. Wagner noted under "history of present illness" that Plaintiff complained of costochondritis bilaterally.  Br. at 453.  He also noted that her past medical history was significant for "possible hiatial hernia."  Br. at 453.  Under "review of symptoms" Dr. Wagner noted complaints of hand stiffness and he observed "she has some Heberden's nodules and some mild bony enlargement of the joints of the hands consistent with early osteoarthritis," and that "she has perhaps a slight bit of difficulty making a tight fist."  AR 453.  To the extent those conditions caused functional limitations, that would have been apparent during Dr. Wagner's exam irrespective of whether he identified them as formal diagnoses, possible diagnoses, or merely symptoms.

As to the records the ALJ independently reviewed, there is no authority delineating the

permissible scope of an ALJ's independent medical record review.  Cases addressing this issue do, however, frown upon an ALJ independently interpreting "raw medical data" such as complex imaging and laboratory testing results, and find harmful error particularly where such records are generated following a new injury not previously considered by the reviewing physicians or a worsening of an existing injury.[3]

The ALJ described the records post- dating Dr. Wagner's January 2019 exam as follows:

> A February 2019 biopsy of the claimant's gallbladder indicated cholelithiasis, but no dysplasia or malignancy (Ex. B6F). A February 2019 chest X-ray was normal with no pneumothorax or effusion (Ex. B4F/28).
>
> Claimant presented for a laparoscopic cholecystectomy in February 2019 (Exs. B4F/22-23; B7F/27-55). Claimant subsequently presented to the emergency room in March 2019 complaining of flank pain. A CT scan showed hepatic lesions and a small hiatal hernia. Claimant was discharged with instruction to follow-up with her care providers (Ex. B7F/20-25).
>
> Claimant returned to Dr. Kesavaramanujam in March 2019 for evaluation after visiting the emergency room. Dr. Kesavaramanujam noted that CT scans showed unchanged hepatic lesions and hiatal hernia. On examination, claimant presented with normal gait and well-healing surgical scars in the abdomen. Dr. Kesavaramanujam noted "no red flags found" and recommended follow-up on an as-needed basis (Ex. B8F/2-4).
>
> Claimant returned to Dr. Kesavaramanujam in July 2019. She reported intermittent abdominal discomfort. On examination, claimant presented with lungs clear to auscultation, no chest wall tenderness, no costovertebral angle tenderness, normal range of motion, and normal strength throughout (Ex. B8F/5-8).
>
> During a November 2019 primary care appointment, claimant denied any abdominal pain or cramping. Kristina Komar, N.P., noted lungs clear to auscultation, and an intact motor and sensory examination. Claimant was continued on her albuterol inhaler (Ex. B5F/9-10).
>
> In a January 2020 primary care appointments, claimant reported "slight pain" but noted she was taking only acetaminophen. It was noted that claimant had presented for multiple emergency room visits with CT scans in the previous years and she was

---

[3] *See, e.g., Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (ALJ formulated claimant's residual functional capacity based on magnetic resonance images without the benefit of any medical opinion about the functional limitations attributable to the impairments depicted in the images); *Goodman v. Berryhill*, No. 2:17-CV-01228 CKD, 2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) (finding that the ALJ erred in adopting state agency consultants' opinions which were rendered before "plaintiff sustained a fall in November 2014" and before "an April 2015 MRI of the lumbar spine [which] showed L1 compression deformity with worsened kyphosis . . .").

advised to avoid further CT scans due to the radiation. Claimant was referred to gastroenterology for evaluation of her hiatal hernia (Ex. B5F/5-9).

A February 2020 ultrasound of the claimant's abdomen showed a minimally enlarged fatty liver with small and unchanged hemangioma as well as interval cholecystectomy without acute process (Ex. B5F/3).

AR 26-27.

Unlike the caselaw cited above in footnote 3, the ALJ's discussion here does not suggest the ALJ independently interpreted raw medical data, complex imaging findings, or records concerning new or worsening impairments not considered by one of the agency's reviewing or examining physicians.

The February 2019 gallbladder biopsy revealing cholelithiasis (gallstones) and the subsequent cholecystectomy (gallbladder removal) were not novel developments. The agency reviewer on reconsideration (Dr. Bobba) had access to those records, was aware of the cholelithiasis diagnosis and the pending referral for cholecystectomy, as was Dr. Wagner. AR 144; 453.

The fact that Plaintiff did in fact undergo the cholecystectomy as planned does not speak to new or worsening limitations arising from the procedure as compared to the pre-surgical records reviewed by the agency physicians. The post-surgical examination records do not suggest any period of extended recovery, complications, or associated limitation. To the contrary, as the ALJ noted, a follow up examination with Dr. Kesavaramanujam in March 2019 noted well-healing surgical scars with "no red flags found", and Plaintiff was advised to follow-up on an as-needed basis. AR 27 (citing Ex. B8F/2-4, AR 606–607). These examination notes were self-explanatory and no expert medical guidance was needed for the ALJ to decipher them.

The March 2019 ER visit for flank pain also did not appear to yield any novel findings. Although the CT scan showed small hiatial hernia and hepatic lesions, the hepatic lesions (aka "benign hemangiomata") and hiatial hernia were pre-existing diagnoses dating back to CT scans and Ultrasounds from May 2017 as described by the ALJ. AR 26 (citing Ex. B7F/63-101, AR 567;

585). Those diagnoses pre-dated the agency physicians' review and Dr. Wagner's examination, and there is no reason to believe the conditions worsened thereafter. To the contrary, a February 2020 ultrasound noted "hemangioma unchanged" as described by the ALJ. AR 27 (citing Ex. B5F/3, AR 491).

Similarly, there is no basis to find the ALJ erred in independently interpreting records concerning her costochondritis. The diagnosis dates back to May 2018 as described by the ALJ, AR 26 (citing Ex. B2F/17-18, AR 413–414), which predated the agency physician's review at the initial and reconsideration levels and also predated Dr. Wagner's consultative examination. To the extent there were any novel developments thereafter related to this condition in the records cited by the ALJ above, there was nothing for the ALJ to interpret as they were self-evidently negative. *See* AR 27 (citing Ex. B8F/5-8, AR 609–12) (no chest wall tenderness and no costovertebral angle tenderness). In sum, Plaintiff does not identify any particular records the ALJ impermissibly or inadequately interpreted, nor is there anything apparently anomalous about the ALJ's independent review of medical evidence here that would have required an updated opinion of a medical expert.

### B. Manipulative Limitations

Plaintiff disputes the ALJ's finding that she can perform handling and fingering "frequently, as opposed to repetitively." AR 25. Plaintiff cites cases noting frequency and repetition are distinct concepts in that a job may require only frequent (2/3 of 8-hour day), or even occasional (1/3) manipulation, but still require some degree of repetition. Br. at 9 (citing *Jacques v. Colvin*, CV 12-2550-SP, 2013 WL 812100, at *5 (C.D. Cal. Feb. 25, 2013)).

Defendant responds that the Ninth Circuit has found "the ability to engage in frequent reaching and handling is not clearly inconsistent with the inability to engage in excessive or repetitive use of the hands." Resp. at 11, Doc. 27 (citing *Stark v. Astrue*, 462 F. App'x 756, 756-57 (9th Cir. 2011) (holding that the ability to engage in frequent reaching and handling is not clearly

inconsistent with the inability to engage in excessive or repetitive use of the hands).

To Plaintiff's point, it is not necessarily the case that a limitation to frequent handling and fingering rules out the possibility of repetitive handling and fingering. If a job requires only 2 hours of total daily handling and fingering (much less than 2/3 of an 8-hour day), but those activities must be performed in succession with no break in the action, then that would be repetitive in the ordinary sense of the word. Conversely, to Defendant's point, a job requiring frequent handling and fingering does not necessarily require repetitive handling and fingering. A job conceivably might require 6 hours of total daily manipulative activity, but with other tasks interspersed.

Here, the ALJ appeared to be under the mistaken impression that limiting Plaintiff to frequent handling and fingering ruled out the possibility of repetitive handling and fingering. *See* AR 29 ("Therefore I have limited her to frequent handling and fingering to avoid repetitive use of her hands . . . Claimant may only frequently, as opposed to repetitively, handle and finger bilaterally."). If repetitive handling and fingering was precluded, at least one of Plaintiff's two previous jobs would likely be eliminated (nut sorter, unskilled, sedentary per the DOT) given that "[m]ost unskilled sedentary jobs require good use of the hands and fingers for *repetitive* hand-finger actions." SSR 83-10, 1983 WL 31251, at * 5 (emphasis added).

Defendant nevertheless reasons that the ALJ "clearly used the term 'repetitive' as synonymous with 'constant, and, because the term 'repetitive' has no fixed meaning in the regulations, this Court should affirm." Resp. at 11. Although it is a close call, the undersigned agrees remand is not warranted solely for the ALJ to correct the imprecise language used as the evidence here does not support restrictions beyond frequent handling and fingering.

As the ALJ noted, there was no evidence to support a medically determinable impairment of carpal tunnel syndrome. AR 23–24. Plaintiff testified to a vague recollection of being referred to therapy for the condition years earlier, that they would put her hands in ice and wax, and that Dr.

Tim (perhaps the physical therapist) "checked me and said I have carpal tunnel." AR 61–62.

As to her bilateral hand osteoarthritis, the evidence is also limited. Plaintiff testified she had not been referred to a specialist and was taking ibuprofen and Tylenol for pain. AR 62–63. The medical evidence reflects a diagnosis of "Generalized OA (Polyarthritis, unspecified)" though it was rendered in the context of a visit to address a chief complaint of shoulder pain. AR 349–350.

The consultative examiner, Dr. Wagner, provided what appears to be the only detailed examination findings regarding Plaintiff's hand arthritis noting, "Heberden's nodules and some mild bony enlargement of the joints of the hands consistent with early osteoarthritis," that "she has perhaps a slight bit of difficulty making a tight fist," but he nevertheless opined that she had no manipulative limitations. AR 453, 456.  In *Jacques*, by contrast (which Plaintiff cites in support of her argument), the examining physician opined the claimant could not perform repetitive grasping or gripping. *Jacques v. Colvin*, No. CV 12-2550-SP, 2013 WL 812100, at *5 (C.D. Cal. Feb. 25, 2013).  There is no such opinion in the record here.

Relatedly. Plaintiff's daughter provided a third party statement noting, among other things, "during last five years I noticed that she has a hard time with a lot of things, her hands started getting stuck, she couldn't bend her fingers. I would notice that when she tried to wash dishes and her hands wound got swollen and puffy, she couldn't wash dishes for a long time. She would try to clean them all and she would end up dropping dishes and breaking them." AR  335–36.

In sum, the evidence does support some manipulative limitations attributable to hand arthritis, but not beyond a restriction to frequent handling and fingering.

### C. Plaintiff's Subjective Complaints

#### 1. Applicable Law

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record

such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3).

The ALJ is responsible for determining credibility,[4] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

---

[4] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5.

### 2. **Analysis**

Plaintiff emphasizes her testimony that, among other things, she can stand and walk no more than an hour, lift only a half gallon of milk, and struggles with daily activities due to hand pain, stiffness, and daily sharp pain in her chest, lower ribs and abdomen which remains strong despite gallbladder removal surgery.

After summarizing the medical evidence, the ALJ found that "despite claimant's allegations that she is unable to sit, stand, walk and move freely, lift objects, or successfully complete many activities of daily living, the record establishes that clinical examination findings and objective medical studies have been largely mild to moderate overall and at least relatively stable; with claimant reporting at least some improvement with medications and surgical repair." AR 27.

The ALJ also noted at the end of the RFC analysis that Plaintiff "suffered from occasional epigastric abdominal pain, and occasion pain in her lower ribs. The pain is not consistent and she has numerous normal physical exams, including normal abdominal exams. Physical exams do not generally demonstrated loss of function or range of motion, or strength." AR 29.

Plaintiff disputes the ALJ's discussion of the objective evidence as insufficiently specific insofar as the ALJ did not identify which evidence undermines which pieces of testimony. The ALJ's clear and concise discussion of the fairly limited straightforward medical records substantiates the generalization the ALJ provided at the beginning and end of the RFC analysis. No inferential leaps are required to reach that conclusion. The physical exams described mild to moderate abnormalities with several normal abdominal exams, normal range, and normal strength.

The ALJ described the following examinations: 1) May 2017 (mildly tender to deep palpation of the liver, no costovertebral tenderness, intact breath sounds, normal ROM) (AR 569); 2) February 2018 (non-tender abdomen, normal gait, normal ROM) (AR 404); 3) May 2018 (same) (AR 413); 4) January 2019 (minimally tender abdomen, normal strength, normal range of motion) (454–55); 5) July 2019 ("gastrointestinal: soft, nontender," no chest wall tenderness, no costovertebral angle tenderness, normal ROM, and normal strength); 6) November 2019 (denied abdominal pain or cramping) (AR 498); and, 7) January 2020 (reported "slight pain") (AR 493).

Plaintiff at times did report severe pain "like someone punching her in the stomach," she visited the ER several times, and she ultimately underwent gallbladder removal surgery after which she stated the pain remained at level 10/10. Ar. 405, 448-449, 496, 569. Nevertheless as the ALJ noted, other evidence reflects Plaintiff's pain responded to medication. Indeed, she testified her pain comes and goes mostly in the afternoon, and that ibuprofen and Tylenol reduced it from 10/10 to 4/10. AR 54-55. Impairments controlled effectively with medication are generally not disabling. *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ also cited Plaintiff's failure to complete the adult function report, which Plaintiff reasonably disputes. The function report was largely duplicative of issues discussed at the hearing. Plaintiff further disputes the ALJ's reliance on Plaintiff's activities of daily living, including: "caring for her teenage granddaughter, riding in cars, going to doctor's appointments, walking to the store, shopping, providing part-time caretaking services, and spending time with her family." AR 28. An ALJ can rely on a claimant's daily activities to discredit claimant testimony if: (1) the daily activities contradict the claimant's other testimony; or (2) "a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ's discussion here did not add to the persuasiveness of the ALJ's decision. Caring

for her teenage granddaughter and spending time with family are non-specific.  Riding in cars doesn't undermine any of Plaintiff's contentions as she alleged no difficulty with sitting.  AR 64.  It should require no explanation that "going to doctor's appointments" is not an activity inconsistent with a contention of debilitating pain.  Indeed, ALJs often cite *not* going to doctors' appointments (e.g., gaps in treatment or failure to follow up) for the same purpose.

As to the part-time caretaking services, Defendant contends such work activity is inconsistent with total disability.  Resp. at 14 (citing *Sample v. Schweiker*, 694 F.2d 639, 642, 643 (9th Cir.1982) (ALJ entitled to accept admission that claimant actively looking for work to be a tacit admission that he could perform substantial gainful activity).  But Plaintiff testified she was let go because she was sitting down too much due to pain in her side, which does not undermine her contention that she still cannot work due to pain in her side.  AR 47.  An unsuccessful work attempt is not considered a clear and convincing reason to reject a claimant's pain and symptom testimony. *Ligenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007).

The ALJ did however cite Dr. Wagner's consultative exam notes that Plaintiff said she walked half a mile to and from the store for exercise (AR 453, which differed from her testimony that she only walks to the mailbox and back for a total of 5 minutes. AR 65.  That was the only potentially valid example of daily activities the ALJ cited, though the ALJ didn't note the contradiction.

Nevertheless, the largely benign physical examinations cited by the ALJ (in relevant respects such as chest tenderness, abdominal tenderness, strength, and range of motion, as well as Plaintiff's own reported pain levels to her clinicians) tend to undermine Plaintiff's contention of debilitating pain as well as her testimony that her pain was intermittent and reduced to a 4/10 by Tylenol and ibuprofen.  The ALJ therefore reasonably declined to fully adopt Plaintiff's allegations in the RFC.

## VI. Conclusion

For the reasons stated above, the undersigned recommends that the Court find that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. The undersigned further recommends that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied and that the Clerk of Court be directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Darlene Alice Trujillo.

## VII. Objections Due within 14 Days

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 12, 2023**                              **/s/ Gary S. Austin**
                                                           UNITED STATES MAGISTRATE JUDGE