**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARLENE ALICE TRUJILLO,<br><br>    Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY[1],<br>Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:21-cv-0273 JLT GSA<br><br>ORDER DECLINING TO ADOPT THE FINDINGS AND RECOMMENDATIONS OF THE MAGISTRATE JUDGE, GRANTING PLAINTIFF'S APPEAL, AND REMANDING THE ACTION FOR FURTHER PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT<br><br>(Docs. 24, 27, and 28) |

Darlene Alice Trujillo seeks judicial review of a final decision denying her application for supplemental security income under Title XVI of the Social Security Act. (Docs. 1, 24.) Plaintiff asserts the administrative law judge erred by failing to develop the record, rejecting her subjective complaints, and formulating the residual functional capacity. (*See generally* Doc. 24.) The Commissioner asserts the administrative decision is supported by substantial evidence and should be affirmed. (Doc. 27.) For the reasons set forth below, Plaintiff's appeal from the administrative decision is granted, and the matter is remanded for further administrative proceedings.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.

1

## I. Decision of the ALJ

The ALJ determined Plaintiff did not engage in substantial gainful activity after submitting her application on October 26, 2018. (Doc. 12-1 at 27.) Second, the ALJ found Plaintiff's severe impairments included: "multiple hemangiomas, symptomatic cholelithiasis, small hiatal hernia, costochondritis, generalized osteoarthritis, and asthma." (*Id*.) The ALJ determined several other impairments—including hypertension, hyperlipidemia, gastroesophageal reflux disease, carpal tunnel syndrome and osteoarthritis—were either not severe or not medically determinable impairments. (*Id.* at 27-28.) At step three, the ALJ determined Plaintiff's physical impairments did not meet or medically equal a Listing. (*Id.* at 28-29.) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she should avoid prolonged exposure to concentrated chemicals, dust, fumes, and gases. Claimant must avoid extreme workplace hazards such as unprotected heights or dangerous moving machinery. Claimant may only frequently, as opposed to repetitively, handle and finger bilaterally.

(*Id.* at 29.) In so finding, the ALJ indicated she considered "the entire record," including medical evidence and Plaintiff's subjective complaints. (*Id.*; *see also id.* at 29-33.) With this RFC, the ALJ found Plaintiff was able to perform her past relevant work as a nut sorter and bottle line assistant, "as generally and actually performed." (*Id.* at 34.) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.*)

## II. Findings and Recommendations of the Magistrate Judge

The magistrate judge observed that "the agency may obtain a consultative examination to resolve evidentiary ambiguity or insufficiency, not that an ALJ must do so in every case." (Doc. 28 at 6, citing 20 C.F.R. § 404.1519; *Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020).) The magistrate judge found Plaintiff failed to show the ALJ had a duty to develop the record to obtain additional medical evidence related to Plaintiff's physical impairments. (*Id.* at 5-7.) In addition, the magistrate judge determined, "Plaintiff does not identify any particular records the ALJ impermissibly or inadequately interpreted, nor is there anything apparently anomalous about the ALJ's independent review of medical evidence here that would have required an updated opinion of a medical expert." (*Id.* at 9.)

Addressing Plaintiff's manipulative limitations, the magistrate judge opined that "the ALJ appeared to be under the mistaken impression that limiting Plaintiff to frequent handling and fingering ruled out the possibility of repetitive handling and fingering." (Doc. 28 at 10.)  The magistrate judge acknowledged that "[i]f repetitive handling and fingering was precluded, at least one of Plaintiff's previous jobs would likely be eliminated," because unskilled and sedentary work, such as the position of nut sorter was classified, requires "good use of the hands and fingers for *repetitive* hand-finger actions." (*Id.*, quoting SSR 83-10, 1983 WL 31251, at *5 [emphasis in original].)  Nevertheless, the magistrate judge reviewed the record—including a third party statement completed by Plaintiff's daughter—and concluded, "the evidence does support some manipulative limitations attributable to hand arthritis, but not beyond a restriction to frequent handling and fingering." (*Id.* at 11.)

Finally, the magistrate judge found the ALJ properly rejected Plaintiff's subjective complaints. (Doc. 28 at 13-15.)  Plaintiff argued that the ALJ erred because she "did not identify which evidence undermines which pieces of testimony," but the magistrate judge found the ALJ's "discussion of the fairly limited straightforward medical evidence substantiates the generalization the ALJ provided" in rejecting Plaintiff's complaints. (*Id.* at 13.)  The magistrate judge also noted Plaintiff "testified her pain comes and goes mostly in the afternoon, and that ibuprofen and Tylenol reduced it from 10/10 to 4/10." (*Id.*)  The magistrate judge found this supported the ALJ's decision, because "[i]mpairments controlled effectively with medication are generally not disabling." (*Id.* at 14, citing *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006).)  The magistrate judge found the ALJ's findings concerning Plaintiff's daily activities "did not add to the persuasiveness of the ALJ's decision." (*Id.* at 14-15.)  For example, the magistrate judge found Plaintiff's ability to ride in cars—as mentioned by the ALJ— "doesn't undermine any of Plaintiff's contentions as she alleged no difficulty with sitting." (*Id.* at 15.)  In addition, the magistrate judge found Plaintiff's failed attempt at part time work was not a clear and convincing reason to reject her testimony. (*Id.* at 15.)  However, the magistrate judge found:

> [T]he largely benign physical examinations cited by the ALJ (in relevant respects such as chest tenderness, abdominal tenderness, strength, and range of motion, as well as Plaintiff's own reported pain levels to her clinicians)" undermined tend to undermine Plaintiff's contention of debilitating pain as well as her testimony that her pain was intermittent and reduced to a 4/10 by Tylenol and ibuprofen.

(*Id.*)  Therefore, the magistrate judge found "[t]he ALJ reasonably declined to fully adopt Plaintiff's allegations in the RFC."  (*Id.*)

The magistrate judge recommended that "the Court find that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled."  (Doc. 28 at 16.)  Thus, the magistrate judge recommended Plaintiff's appeal be denied and judgment be entered in favor of the Commissioner.  (*Id.*)

## III.     Objections

Plaintiff contends the finding of the magistrate judge "should be rejected and this case should be [r]emanded for a new hearing."  (Doc. 32 at 14.)  Plaintiff maintains the ALJ erred in addressing her manipulative limitations.  (*Id.* at 2-4.)  Plaintiff argues, "It was not for the Magistrate Judge to review the evidence to determine if the ALJ's limitation on repetitive handing and fingering was supported by substantial evidence, as apparently, even the Defense did not raise this argument."  (*Id.* at 4, emphasis omitted.)  Rather, Plaintiff argues, "the issue for the [Court] to resolve was whether the ALJ committed harmful error by using 'imprecise language' regarding the ALJ's attempt to limit use of 'repetitive' manipulative movements given the overall weight of the case law holding that a limitation from repetitive use of the hands is separate a limitation from a limitation to frequent use of the hands."  (*Id.*, citations omitted.)

Plaintiff asserts the magistrate judge erred addressing her subjective complaints and testimony.  (Doc. 32 at 6-13.)  Plaintiff contends that she agrees with the magistrate judge's analysis concerning her activities of daily living and the unsuccessful work attempt.  (*Id.* at 7.)  However, Plaintiff "takes issue" with the conclusion that "largely benign physical examinations cited by the … as well as her testimony that her pain was intermittent and reduced to a 4/10 by Tylenol and ibuprofen" supported the rejection of her complaints.  (*Id.* at 8.)  According to Plaintiff, "the fact that 'ibuprofen' reduces [her] pain from a 10/10 to 4/10 is not a necessarily indication that [her] impairments are 'effectively' controlled with medication such that she could perform work activity on a sustained basis, 5 days a week 40 hours a week in a normal work environment."  (*Id.* at 9.)  Plaintiff notes the ALJ did not identify any evidence that Plaintiff's pain "was controlled such that she could perform work activity."  (*Id.* at 10.)  Because the lack of objective medical evidence alone "cannot support the ALJ's rejection

4

of [her] subjective symptom testimony," Plaintiff contends the ALJ failed to provide "clear and convincing" reasons to reject her symptomology evidence. (*See id.* 3, 8)

Plaintiff also argues the ALJ erred by failing "to address the two third party letters dated March 6, 2020 and April 10, 2020 from Ms. Trujillo's daughters, Vanessa Vargas and Priscilla Carrasco (AR 335-337) raised in [Plaintiff's opening brief], regarding the extent of Ms. Trujillo's pain." (Doc. 32 at 12.) Plaintiff contends:

> The ALJ harmfully erred by failing to even note or address this third party evidence, one way or the other and provide germane reasons to reject it, especially regarding the issue at bar which is the extent of "control" of Ms. Trujillo's pain, given her multiple impairments and continued flare-ups despite her use of ibuprofen and surgery and the debilitating affect her pain continues to have on her functioning which would prevent work activity.

(*Id.* at 13, citing *Heather P. v. Kijakazi*, 2022 WL 1538654, at *8 (D. Or. May 16, 2022) (emphasis omitted).) Plaintiff notes that in *Heather P.*, the court observed: "[T]he new regulations do not to do away with the ALJ's obligation to address lay witness testimony altogether. Instead, it only clarifies that the ALJ does not need to use the new standards for evaluating medical opinion evidence when evaluating non-medical source lay testimony." *Id.*

The Commissioner filed a response to the objections, stating that the Court should affirm the administrative decision "[f]or the reasons stated in the Commissioner's earlier brief and the Magistrate Judge's Finding and Recommendation." (Doc. 33 at 2.)

## IV.     Discussion and Analysis

A district judge may "accept, reject or modify, in whole or in part, the findings and recommendations ..." 28 U.S.C. § 636(b)(1). If a party files objections, "the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendations to which objection is made." *Id.* A de novo review requires the Court to "consider[] the matter anew, as if no decision had been rendered." *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009).

### A.     Duty to develop the record

As an initial matter, Plaintiff appears to conflate the ALJ's duty to develop the record with the separate responsibility of the ALJ to support a residual functional capacity with substantial evidence in the record. The law imposes a duty to develop the record only in limited circumstances. 20 C.F.R. §§

5

404.1512(d)-(f), 416.912(d)-(f) (recognizing a duty on the agency to develop medical history, contact medical sources, and arrange a consultative examination if the evidence received is inadequate for a disability determination). The duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (explaining that "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry").

Ambiguous evidence "means incapable of explanation." *Zargi v. Comm'r of Soc. Sec.*, 2009 WL 1505311, at *19 (E.D. Cal. May 27, 2009). Even conflicts in medical evidence to not create an ambiguity, as an ALJ is charged with the responsibility to resolve conflicts. *See id.*; *see also Torres v. Comm'r of Soc. Sec.*, 2020 WL 5820610, at *8 (E.D. Cal. Sept. 30, 2020). Plaintiff does not identify any ambiguities—or medical information incapable of explanation— and the ALJ did not find the record was inadequate to evaluate the evidence. Therefore, Plaintiff fails to show the ALJ's duty to develop the record was triggered. *See Tonapetyan*, 242 F.3d at 1150; *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

### B. Plaintiff's residual functional capacity

A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating an RFC, the ALJ weighs medical and other source opinions. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). The ALJ must consider "all of [a claimant's] medically determinable impairments," whether severe or not, when defining a claimant's RFC. 20 C.F.R. § 416.945(a)(2).

#### 1. Manipulative limitations

Plaintiff contends the ALJ erred by finding that "[Plaintiff] may only frequently, as opposed to repetitively, handle and finger bilaterally." (*See* Doc. 24 at 8-10.) Plaintiff argues, "The term 'repetitive' describes only the manner in which a person uses her hands and the type of action required,

but the terms 'occasional' or 'frequent' reflect only how often the person is using her hands in that particular manner." (*Id.*, citing *e.g., Castro v. Astrue*, 2011 WL 3500995, at *13 (E.D. Cal. Aug. 9, 2011).) According to Plaintiff, "the ALJ's RFC limiting Plaintiff to 'frequent' use of use of the hands for handing and fingering fails to address the fact that Plaintiff may still be required to perform repetitive gripping or grasping with her hand." (*Id.* at 10.) She maintains the RFC "is internally inconsistent" with the limitation to frequent use of hands, but not repetitive use. (*Id.*)

 Significantly, Plaintiff ignores that how often a person uses her hands is not limited to the terms of "occasional" or "frequent," but an individual may also be required to use her hands on a "constant" basis. Resources such as the *Dictionary of Occupational Titles* and vocational experts evaluate the terms "constantly" and "repetitively" in the same way: as requiring performance of the activity for two-thirds of the workday or more. *See, e.g., Gallegos v. Barnhart,* 99 Fed. Appx 222, 224-25 (10th Cir. 2004) (stating the plaintiff "presumes the terms 'frequent' and 'repetitive' are synonymous, but they are not," and observing the vocational expert indicated the term "repetitive" meant "from two-thirds to 100 percent of the time"); *Creech v. UNUM Life Ins. Co. of N. Am.*, 162 Fed. Appx. 445, 451 n.10 (6th Cir. 2006) (observing that "repetitively, constantly, or continuously" each mean "67% or above" of a workday); *see also* DOT 920.687-042, 2023 WL 2402919 (bottle line assistant position, and explaining the term "constantly" refers to activities that "exist[] 2/3 or more of the time"). In contrast, "frequently" is defined in DOT as requiring performance of the work activity for between one-third and two-thirds of the workday. *See, e.g.,* DOT 521.687-086, 1991 WL 674226 (nut sorter position, identifying the strength required for the work and indicating an activity performed "frequently" is one that "exists from 1/3 to 2/3 of the time").

 Toward that end, administrative law judges—and courts—have used the terms "constantly" and "repetitively" together in describing a claimant's limitations. *See, e.g., Poole v. Comm'r of Soc. Sec.*, 2016 WL 4096448 (E.D. Cal. Aug. 2, 2016) (finding the ALJ properly synthesized the medical opinion evidence in identifying an RFC staying the claimant could "frequently, though not constantly or repetitively, being able to reach, handle, finger and feel"); *Johnson v. Colvin*, 2015 U.S. Dist. LEXIS 71316, at *5 (C.D. Cal. June 1, 2015) (affirming the administrative decision, which included an RFC limiting the claimant to "frequent gross manipulations with the hands, but not constantly or

repetitively"). Here, the ALJ expressly indicated that the limitation to frequent handling was "to avoid repetitive use of [the] hands." (Doc. 12-1 at 33.) Is clear from the ALJ's discussion that she intended to limit Plaintiff to *more than* frequent use of her hands, such as constant use. Thus, the ALJ found Plaintiff could perform the manipulative activities frequently, which is one-third to two-thirds of the time, but not constantly or repetitively, which is two-thirds or more of the time. Contrary to Plaintiff's assertion, the RFC is not "internally inconsistent," and remand is not required on this issue.

### 2. ALJ's review of the evidence

Plaintiff argues, "The ALJ was not qualified to interpret … additional clinical findings without assistance from a medical expert, and committed legal error by failing to obtain updated medical opinion evidence." (Doc. 24 at 9.) In support of the assertion that the ALJ erred in reviewing the evidence to formulate the RFC, Plaintiff cites *Vasquez v. Comm'r of Soc. Sec.,* 2019 WL 3714565, at *4 (E.D. Cal. Aug. 7, 2019), *Dean v. Commr. of Soc. Sec.* 2020 WL 1164591, at *6 (E.D. Cal. Mar. 11, 2020; *Escudero v. Comm'r. of Soc. Sec.,* 2019 WL 4917634, at *2 (E.D. Cal. Oct. 4, 2019). Plaintiff fails to address how these cases are like the matter now before the Court. Plaintiff does not identify any specific *clinical findings* that the ALJ reviewed and was required to interpret. *Compare with Dean*, 2020 WL 1164591 at *6 (where the ALJ reviewed clinical findings including nerve conduction studies, straight leg raise test results, and additional evidence not reviewed by medical providers) and *Escudero*, 2019 WL 4917634, at *2 (the ALJ reviewed "medical data" including an x-ray image and new diagnoses that the Court found were "not susceptible to a lay understanding"). The Court declines to speculate as to what new clinical findings the ALJ lacked the ability to review or exceeded her lay opinion. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003) (holding that the Ninth Circuit "has repeatedly admonished that the court will not "manufacture arguments" for parties). Accordingly, Plaintiff fails to show remand is warranted on this issue.

### C. Subjective complaints

In evaluating a claimant's statements regarding the severity of her symptoms, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).

Second, if there is no evidence of malingering, the ALJ must make specific findings as to credibility by setting forth clear and convincing reasons for rejecting a claimant's subjective complaints. *Id.* at 1036. An ALJ must identify "specific reasons" to support the decision, in a manner "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

The ALJ provided a chronological summary of the medical evidence and then found Plaintiff's medically determinable impairments— which included "multiple hemangiomas, symptomatic cholelithiasis, small hiatal hernia, costochondritis, generalized osteoarthritis, and asthma"—"could reasonably be expected to cause the alleged symptoms." (Doc. 12-1 at 27, 32.) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record..." (*Id*. at 32.) The ALJ supported her findings by stating:

> In reviewing the claimant's statements, the objective medical studies and clinical examination findings do not fully corroborate her alleged symptoms and limitations. For example, despite claimant's allegations that she is unable to sit, stand, walk and move freely, lift objects, or successfully complete many activities of daily living, the record establishes that clinical examination findings and objective medical studies have been largely mild to moderate overall and at least relatively stable; with claimant reporting at least some improvement with medications and surgical repair. The foregoing suggests that the claimant's symptoms may not have been as serious as has been alleged in connection with this application.
>
> I additionally note that the claimant has apparently elected not to complete and submit an adult function report. By not providing the information requested in this form, the claimant lost an opportunity to provide further insight into the precise nature and severity of her allegedly disabling symptoms and limitations. Nevertheless, the claimant has also described daily activities that are not limited to the extent one would expect given her allegations of disabling symptoms. These activities include caring for her teenage granddaughter, riding in cars, going to doctor's appointments, walking to the store, shopping, providing part-time caretaking services, and spending time with her family (Ex. B3F; Hearing Testimony). Because of the foregoing inconsistencies, I therefore find that the claimant's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms are not fully supported by the record (see SSR 16-3p).

(Doc. 12-1 at 31-32; *see also id.* at 30-31.)

///

### 1. Completion of an adult function report

The ALJ seems to support the decision to reject Plaintiff's statements concerning the severity of her symptoms because Plaintiff "elected not to complete and submit and adult function report," and did not provide additional information concerning her limitations. (Doc. 12-1 at 31.) However, a review of the record shows that Plaintiff's attorney, Jonathan Pena, completed and submitted several adult function reports on Plaintiff's behalf. (*Id.* at 275-277 [Exh. B2E]; 295-301 [Exh. B4E]; 306-310 [Exh. B7E].) These forms—which clearly indicate another may complete the form—were completed on October 26, 2018; February 5, 2018; and March 12, 2019. (*Id.*) Thus, though *Plaintiff* did not complete and submit the adult function report, the record clearly includes reports prepared by counsel, discussing Plaintiff's impairments and whether she had any changes as the application progressed from the initial level to the hearing level. (*See, e.g.*, 276 [identifying Plaintiff's physical conditions that limit her ability to work], 296 ["my overall health has worsened"], 307-307 [indicating no changes since the prior form was completed].)

Moreover, Plaintiff testified at the hearing concerning her ability to sit, stand, walk, and carry items. (*See, e.g.,* Doc. 12-1 at 67-69.) As a result, the record included similar information as claimants provide in any function reports. The purported failure to complete and submit an adult function form is not a clear and convincing reason to reject Plaintiff's statements regarding the severity of her symptoms. *See Galloway v. Colvin*, 2016 WL 1237684, at *8 (C.D. Cal. Mar. 21, 2016) (finding an ALJ erred by discounting a claimant's credibility on the grounds that she failed to complete a function report because the claimant testified concerning her activities of daily living, and the lack of a function report did not impede adjudication of the case); *Alan G. v. Berryhill*, 2019 WL 3728992, at *7-8 (D. Or. Mar. 8, 2019) (finding the ALJ erred in considering the claimant's failure to submit a function report in evaluating his subjective statements).

### 2. Daily activities

When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999), citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Notably,

the fact a claimant engages in normal daily activities "does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

The ALJ indicated that Plaintiff "described daily activities that are not limited to the extent one would expect given her allegations of disabling symptoms." (Doc. 12-1 at 32.)  The ALJ identified the following activities: "caring for her teenage granddaughter, riding in cars, going to doctor's appointments, walking to the store, shopping,… and spending time with her family." (*Id.*)  However, the ALJ mischaracterizes Plaintiff's testimony.  For example, Plaintiff testified that she "can sit for a long time," and as a result, her "riding in cars" does not contradict any statements concerning her ability to sit.  (*See id.* at 68.)  Plaintiff also stated she can stand for "about an hour" and "can walk," but if she needed to go to the store, her daughter would drive her there. (*Id.* at 49, 67-68.)  Plaintiff said that while she had custody of her granddaughter, her granddaughter was "always with her aunt," who also drove Plaintiff's granddaughter to school and any doctor appointments.  (*Id.* at 48-49.)  It is unclear how Plaintiff's ability to provide care for her teenage granddaughter and "spend[] time with her family" relates to any of her impairments or the severity of her symptoms.  Finally, the ALJ did not make a determination that Plaintiff spent a "substantial" part of her day engaged in such activities, or that these limited daily activities are transferable to a workplace.  Indeed, "household chores and grocery shopping are not activities that are easily transferable to a work environment." *Blau v. Astrue*, 263 Fed. App'x 635, 637 (9th Cir. 2008).  Thus, the identified daily activities are not a clear and convincing reason to discount Plaintiff's testimony concerning the severity of her symptoms.

### 3. Work attempt

The ALJ noted that Plaintiff "provid[ed] part-time caretaking services."  (Doc. 12-1 at 32.)  Plaintiff testified that she worked parttime providing personal care, for which she was paid by the California Department of Social Services.  (*Id.* at 50-51.)  Plaintiff reported she worked for "about a month or two," but Plaintiff was fired because she "was sitting down a lot" due to pain.  (*Id.*)  The ALJ does not acknowledge the testimony that Plaintiff's symptoms impaired her ability to perform the tasks required, leading to her termination.  (*See* Doc. 12-1 at 32.)

Courts have repeatedly determined an ALJ may not use an attempt to work to discount a claimant's subjective complaints.  *See, e.g., Lingenfelter v. Astrue*, 504 F.3d 1028, 1039 (9th Cir. 2007)

11

("a nine week unsuccessful work attempt is surely not a clear and convincing reason for finding that a claimant is not credible regarding the severity of his impairments"); *Bonnie B. v. Saul*, 2020 WL 7695332, at *5 (S.D. Cal. Dec. 23, 2020) (a failed attempt to work, including a four-month stint that was "rendered unsuccessful solely by Plaintiff's symptoms and limitations, strengthens Plaintiff's credibility"); *Kathryn P. v. Comm'r, Soc. Sec. Admin.*, WL 4234181, at *5 (D. Or. June 26, 2023) (finding it was "improper for the ALJ to discredit [p]laintiff's testimony because she tried—unsuccessfully—to continue to work part-time during her period of alleged disability"). Because Plaintiff reported that she was only able to work for "about a month or two," and was fired after sitting due to her pain, the brief parttime employment is not a clear and convincing reason to support the ALJ's decision to reject Plaintiff's subjective statements.

### 4. Improvement with treatment

When assessing a claimant's credibility, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ stated that Plaintiff appeared "at least relatively stable" and noted she "report[ed] at least some improvement with medications and surgical repair." (Doc. 12-1 at 31.) The ALJ did not cite any evidence to support these conclusions. Without such citations by the ALJ, the Court is unable to find this is a clear and convincing reason to support the rejection of Plaintiff's subjective statements. *Compare Sandra V. v. O'Malley*, 2024 U.S. Dist. LEXIS 148168, at *13 (C.D. Cal. Aug. 19, 2024) (finding the ALJ properly relied on improvement with treatment "because the ALJ cited numerous medical records indicating Plaintiff's symptoms improved") *with Hernandez v. Kijakazi*, 2023 WL 8948405, at *5 (E.D. Cal Dec. 28, 2023) (finding the ALJ erred in relying on improvement as a reason because the ALJ failed to "cite to evidence in the record observing specific improvement in Plaintiff's symptoms due to medication"). Consequently, this factor does not support the ALJ's decision.

### 5. Control over impairments

As discussed above, the magistrate judge reviewed the record and suggested that Plaintiff's impairments appeared to be controlled effectively with medication, because ibuprofen and Tylenol reduced Plaintiff's pain from 10/10 to 4/10. (Doc. 28 at 14.) The magistrate judge noted that the Ninth Circuit determined "[i]mpairments controlled effectively with medication are generally not disabling,"

12

and this supported the ALJ's decision. (*Id.*, citing *Warre*, 439 F.3d at 1006.)

Significantly, the ALJ did not make any finding that Plaintiff's impairments were controlled with medication, or otherwise identify this as a reason to support the decision to discount Plaintiff's subjective complaints. (*See* Doc. 12-1 at 31-32.) The Court is constrained to review only the reasons identified by the ALJ and cannot provide such post-hoc reasoning. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (noting a reviewing court is "constrained to review the reasons the ALJ asserts"); *Burrell v. Colvin*, 775 F.3d 1113, 1138 (9th Cir. 2014) (reiterating the court is "constrained to review the reasons the ALJ asserts" and cannot cure analysis deficiencies by exceeding this scope). Therefore, the Court declines to find this is a clear and convincing reason supporting the ALJ's determination.

### 6.     Objective medical evidence

The sole remaining factor considered by the ALJ was the consistency with the objective medical evidence. (*See* Doc. 12-1 at 31-32.) In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can be "specific and substantial reasons that undermine … credibility." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). However, a claimant's "testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence…." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("lack of medical evidence cannot form the sole basis for discounting pain testimony"). For this reason, the ALJ's analysis is insufficient.

Moreover, even if the objective medical evidence was not the only remaining reason to discount Plaintiff's testimony, it would not constitute a "clear and convincing" reason. Although the ALJ concluded Plaintiff's testimony was "not entirely consistent with the medical record" and "the objective medical studies and clinical examination findings do not fully corroborate her alleged symptoms and limitations," the ALJ did not identify the specific testimony she believed to be inconsistent, or support the conclusions with citations to the record. (Doc. 12-1 at 32.) Unless the ALJ links a claimant's testimony to "the observations an ALJ makes as part of the summary of the medical record," the summary is insufficient to reject a claimant's statements. *Argueta v. Colvin*, 2016 WL 4138577 (E.D. Cal. Aug. 3, 2016), citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir.

13

2015).  In addition, the district court may not review the record to identify inconsistencies.  In *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony.  *Id.*, 806 F.3d at 491.  The district court identified inconsistencies in the ALJ's summary of the medical record that it opined gave rise to reasonable inferences about the plaintiff's credibility.  *Id.*  On appeal, the Ninth Circuit determined the ALJ failed to identify the specific testimony she found not credible and did not link that testimony to support the adverse credibility determination. *Id.* at 493.  The Court explained that even if the district court's analysis was sound, the analysis could not cure the ALJ's failure. *Id.* at 494.

The Ninth Circuit also determined an ALJ erred when discrediting symptom testimony as "not entirely consistent with the medical evidence," without linking testimony and medical evidence in *Holcomb v. Saul*, 832 Fed. App'x. 505 (9th Cir. Dec. 28, 2020).  In *Holcomb*, the ALJ summarized the claimant's testimony and "determined that his symptom testimony was not 'entirely consistent with the medical evidence and other evidence in the record.'" *Id.* at 506.  The Court found that "the ALJ discussed relevant medical evidence but failed to link Holcomb's symptom testimony to specific medical records and explain why those medical records contradicted his symptom testimony." *Id.*  The Court observed that "the ALJ never mentioned Holcomb's symptom testimony while discussing the relevant medical evidence." *Id.*  Because the Court is constrained to the reviewing reasons identified by the ALJ for discounting testimony, the "failure to specific the reasons for discrediting Holcomb's symptom testimony was reversible error." *Id.* (citing *Brown-Hunter*, 806 F.3d at 494).

Likewise, here, the ALJ offered little more than a summary of the medical evidence, and she did not identify hearing testimony from Plaintiff that conflicted with this summary.  The Court is unable to cure these errors.  *See Brown-Hunter*, 806 F. 3d at 494; *Holcomb*, 832 Fed. App'x. at 506; *see also Marie A.G. v. Kijakazi*, 2023 U.S. Dist. LEXIS 74607, at *11 (C.D. Cal. Apr. 28, 2023) ("In the absence of links between the ALJ's findings and Plaintiff's testimony, the Court may not infer that the ALJ's summary of the treatment record contained actual reasons for discounting Plaintiff's testimony and review them as such").

7. General findings

As Plaintiff argues, the ALJ must identify what testimony from a claimant is not credible. *See*

*Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "General findings" regarding credibility, such as the ALJ provided here, "are insufficient." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citations omitted). The Ninth Circuit requires an ALJ to "*specifically identify what testimony is credible* and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (emphasis added); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which pain testimony is not credible and what evidence suggests the complaints are not credible"); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (the ALJ must "specifically identify[] what testimony is not credible and what evidence undermines the claimant's complaints").

This Court recently observed, "summarizing [a] plaintiff's testimony is not equivalent to identifying specific statements." *Sanders v. Comm'r of Soc. Sec.*, 2024 WL 1641035, at *2 (E.D. Cal. Apr. 15, 2024). Because the ALJ offered little more than a truncated summary of Plaintiff's hearing testimony and did not carry the burden to identify specific statements rejected, the ALJ failed to properly set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958.

### D.    Third party statements

To the extent Plaintiff now challenges the ALJ's failure to address the third-party statements completed by Priscilla Carrasco and Vanessa Vargas—Plaintiff's daughters—the issue was not before the magistrate judge. In the opening brief, Plaintiff summarized the statements made by Ms. Carrasco and Ms. Vargas as part of her summary of the "relevant medical evidence." (*See* Doc. 24 at 2-6.) However, Plaintiff did not otherwise mention the statements by Ms. Carrasco and Ms. Vargas in her discussion of the ALJ's decision. (*See generally id.* at 8-14.) The assertion that the ALJ committed a "harmful error" by failing to address the lay witnesses' statements was made for the first time in Plaintiff's objections to the Findings and Recommendations. (*Compare* Doc. 24 at 8-14 *with* Doc. 32 at 2-13.)

The Court exercises its discretion to decline consideration of the arguments concerning the lay witness statements from third parties raised for the first time in the objections. *See Syed v. M-I, L.L.C.*, 2014 WL 6685966, at *7 (E.D. Cal. Nov. 26, 2014) ("A district court has discretion to consider or

decline new arguments raised for the first time in an objection to a findings and recommendations") (citing *Brown v. Roe*, 279 F.3d 742, 745 (9th Cir. 2002)); *Beckley v. Berryhill*, 2019 WL 521580, at *2 (C.D. Cal. Feb. 8, 2019) (declining to consider an argument raised for the first time in objections to a magistrate judge's recommendation to affirm the administrative decision).

### E. Remand

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v*, 80 F.3d at 1292.

Plaintiff requests the matter be remanded for further proceedings. (Doc. 24 at 14.) Remand is appropriate for the ALJ to provide sufficient findings concerning Plaintiff's subjective complaints and the limitations Plaintiff identified in her testimony. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala,* 60 F.3d 639, 642 (9th Cir. 1995) (remanding "for further proceedings evaluating the credibility of [the claimant's] subjective complaints"). Accordingly, a remand pursuant to sentence four of 42 U.S.C. § 405(g) is appropriate.

### V. Conclusion and Order

Pursuant to 28 U.S.C. § 636 (b)(1), this Court performed a *de novo* review of the case. Having carefully reviewed the entire matter, the Court finds the ALJ failed to apply the proper legal standards in evaluating Plaintiff's subjective statements and declines to affirm the administrative decision. Thus, the Court **ORDERS**:

1. The Court declines to adopt the Findings and Recommendations (Doc. 28).

2. Plaintiff's appeal of the administrative decision (Doc. 24) is **GRANTED**.

3. Defendant's request to affirm the administrative decision (Doc. 27) is **DENIED**.

4. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision.

5. The Clerk of Court is directed to enter judgment in favor of Plaintiff Darlene Alice Trujillo and against Defendant Martin O'Malley, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __September 3, 2024__

UNITED STATES DISTRICT JUDGE